UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CPS MEDMANAGEMENT LLC f/k/a McKesson Medication Management, LLC | Civ. No. 2:09-4572 (KM) |
| Plaintiff, | OPINION |
| v. | |
| BERGEN REGIONAL MEDICAL CENTER, L.P., | |
| Defendant. | |
| CPS MEDMANAGEMENT LLC | |
| Third Party Plaintiff, | |
| v. | |
| MCKESSON CORPORATION, | |
| Third Party Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

This action arises from a three-year Agreement, beginning in May 2006, in which defendant Bergen Regional Medical Center, L.P. (the "Hospital") engaged McKesson Medication Management, LLC ("MMM") to manage its hospital pharmacy. Effective December 4, 2008, the Hospital terminated the contract. MMM sued, claiming it was owed money on pending invoices; the Hospital counterclaimed that MMM's performance had been deficient and that MMM had failed to realize $7 million in promised cost savings. On April 4, 2013, I filed an Opinion (the "Opinion") granting in part MMM's motion for summary judgment and denying the Hospital's motion for summary judgment on its counterclaims. Familiarity with that earlier Opinion is assumed. MMM now moves for reconsideration of two aspects of the Opinion, both relating to the Hospital's counterclaims, that were adverse to MMM. MMM also seeks to convert the Hospital's without-prejudice voluntary dismissal of a negligence claim to a dismissal with prejudice. I will deny MMM's motion.

# DISCUSSION

## A. Nature of This Reconsideration Motion

In the Opinion, I granted MMM's motion for summary judgment on its claims based on unpaid invoices. I then considered cross-motions for summary judgment on the Hospital's counterclaims for breach of contract, misrepresentation, breach of the implied duty of good faith and fair dealing, and fraudulent inducement. I found that the Hospital had not raised a triable factual issue that MMM had a contractual duty to deliver $7 million in cost savings over the life of the agreement. To the extent the Hospital's counterclaims were based on such an alleged duty, I severed them and granted MMM summary judgment.

The components of the Hospital's counterclaims that do not relate to the alleged $7 million duty – i.e., the claims of deficient performance – remain in the case. As to those, I denied MMM's motion for summary judgment.[1] That denial gives rise to MMM's motion for reconsideration. MMM's contentions are directed particularly to the Hospital's claim that MMM had a contractual duty, when ordering pharmaceuticals, always to obtain the lowest possible price. That duty, MMM says, cannot be found in Agreement § 1.5(b), which required it to obtain an "appropriate" inventory; the only provisions governing "cost," claims MMM, are Section 2.2 and the PACT provision, neither of which contains the alleged duty to obtain the lowest priced pharmaceuticals.

Finally, I granted the Hospital's application for voluntary dismissal of a negligence claim without prejudice. MMM contends that this dismissal should have been with prejudice.

## B. Standard of Review on Reconsideration Motion

This Court authorizes motions for reconsideration pursuant to Local Civil Rule 7.1(i).[2] *Bowers v. Nat'l Collegiate Athletics Assoc.*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). That Rule states:

---

[1] I also denied the Hospital's mirror-image motion for summary judgment granting its counterclaims.

[2] Motions for reconsideration are not expressly listed in the Federal Rules of Civil Procedure. *See Harrison v. Smith*, Civ. No. 08-3050, 2010 WL 715666, at *2 (D.N.J. Feb. 24, 2010) (citing *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d

2

> [A] motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion.

L. Civ. R. 7.1(i).

A motion for reconsideration pursuant to this District's Local Rules or Federal Rule of Civil Procedure 59 is "'an extremely limited procedural vehicle.'" *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F. Supp. 2d 542, 549 (D.N.J. 2000) (quoting *Resorts Int'l, Inc. v. Greate Bay Hotel and Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992)). A court will grant a motion for reconsideration only where: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x. 743, 747 (3d Cir. 2009) (non-precedential). In other words, such a motion may be granted where facts or controlling legal authority were presented to, but not considered by, the court. *Mauro v. N.J. Supreme Ct.*, 238 F. App'x 791, 793 (3d Cir. 2007) (non-precedential).

Reconsideration is not warranted, however, where (1) the movant simply repeats the cases and arguments previously analyzed by the court, *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 416 (D.N.J. 2005); *see also Tehan*, 111 F. Supp. 2d at 549 ("Motions for reconsideration will not be granted where a party simply asks the court to analyze the same facts and cases it had already considered . . . ."); or (2) the movant has filed the motion merely to disagree with or relitigate the court's initial decision, *id.*; *see Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996) ("A party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument."). The motion is not a vehicle for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment. *See Bapu Corp. v. Choice Hotels Int'l, Inc.*, Civ. No. 07-5938, 2010 WL 5418972 (D.N.J.

---

339, 345 (D.N.J. 1999)). Courts have sometimes treated them as motions to alter or amend the judgment of the court pursuant to Rule 59(e), or as motions for relief from the court's judgment or order under Rule 60(b). *See Harrison*, 2010 WL 715666 at *2.

Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

Because the requirements are so stringent, motions for reconsideration typically are not granted; rather, relief is "an extraordinary remedy" to be granted "sparingly." *See NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Unless a court has truly failed to consider pertinent authorities or evidence that could not with reasonable diligence have been presented earlier, a motion to reconsider a decision (even one that may contain an error) is generally futile.

### C. Reconsideration of Whether the Agreement is Ambiguous

As to the Hospital's counterclaims, says MMM, the Opinion clearly erred, finding a contractual ambiguity where there was none. MMM therefore contends that the Court should have granted MMM's motion for summary judgment as to the Hospital's counterclaims. Procedurally, MMM's points are not properly raised on a motion for reconsideration; substantively, MMM is incorrect.

In explicating when a contract might be ambiguous, I quoted *In re New Valley Corporation*, which states that a contractual provision is ambiguous if it is "capable of being understood in more senses than one." 89 F.3d 143, 152 (3d Cir. 1996).[3] Not correct, says MMM; a contractual provision is ambiguous only if it has "at least two *reasonable* alternative interpretations." *Chubb Custom Ins. Co. v. Prudential Ins. Co.*, 195 N.J. 231, 238, 948 A.2d 1285, 1289 (2008) (emphasis added). MMM believes I glossed over the distinction between a *possible* and a *reasonable* interpretation.

MMM attempts to dress this up as something new by citing *Chubb*, which it did not cite in its summary judgment papers. But *Chubb*, a 2008 case, was no less available then than it is now. *Chubb* is, moreover, a statement of the "rules governing *insurance* contract interpretation" -- probably reason enough to have refrained from citing it the first time. *Id.* (emphasis added).

More fundamentally, the standards stated in *New Valley* and *Chubb Custom* are in fact one and the same. *New Valley*, which found a contractual ambiguity, held that "the [contractual] words 'at any time' may admit of *more than one reasonable interpretation.*" 89 F.3d at 151 (emphasis added). One

---

[3] *New Valley* was cited in the Hospital's briefing as well, so MMM had the opportunity to address it.

4

party's interpretation, said the Court, was "at least equally plausible as" the other's. 89 F.3d at 152. In short, *New Valley* correctly states the standard.

And I applied that standard. Quite simply, "reasonable" goes without saying; it is understood (which may account for its absence from some of *In re New Valley*'s alternative formulations of the standard). Indeed, the summary judgment standard itself requires that I determine whether a "reasonable" jury could return a verdict for the nonmoving party. (Op. at 11 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). I was not laboring under a misapprehension that any possible ambiguity, however unreasonable, would suffice to defeat summary judgment. And I did not deny summary judgment on that basis.

Rather, I applied the methodology for analyzing a contractual ambiguity that was set forth by *New Valley*:

> To decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear. Rather, we hear the proffer of the parties and determine if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings. Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. And once a contract provision is found to be ambiguous, extrinsic evidence must be considered to clarify its meaning.

(Op. at 18 (quoting *New Valley*, 89 F.3d at 150)). That entire analytic approach is inconsistent with a "possible" standard; it embodies the application of reason to the facts in order to determine whether an ambiguity exists – a "reasonable" standard.

In determining that 1.5(b), the section of the Agreement that required MMM to keep an appropriate inventory, was ambiguous, the Court carefully considered the language of the Agreement, each counsel's arguments, and the extrinsic evidence offered by the parties. (Op. at 28-30). This is exactly what the law dictates. *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431

(3d Cir. 1991) ("In determining whether a contract term is ambiguous, we must consider the actual words of the agreement themselves, as well as any alternative meanings offered by counsel, and extrinsic evidence offered in support of those alternative meanings."). There is no provision in the Agreement that explicitly corresponds to either party's position regarding the minimization of drug spending. Several provisions pull in different directions as regards a duty to always find the lowest price as to each medication, as the Opinion found. The Agreement, as established in the Opinion, could reasonably be interpreted in more than one way.

The rest of MMM's arguments share the same threshold procedural flaw. All respond to contentions that the Hospital made in the motions for summary judgment. All could have been asserted in MMM's 75 pages of summary judgment briefing or at the lengthy oral argument.

I nevertheless consider MMM's arguments, but find them wanting. At the outset, I point to the portion of the Opinion beginning at page 27, which states that these claims present triable issues of fact and therefore will be discussed only briefly. The counterclaims broke down easily into claims based on the alleged duty to produce $7 million in savings, and claims based on deficient performance. I severed them on that basis, (*see* Op. at 22), but I am disinclined to break them down further. The issues raised in this reargument motion are, in many cases, factual subparts of subissues (such as deficient management of the pharmacy), which are themselves subparts of the issue of deficient performance. (*See* Op. at 27-32). I am reluctant to award partial summary judgment as to discrete subissues when the counterclaims of which they are a part must be litigated, and should be litigated in their full factual context.

The Opinion found a triable issue as to whether the Agreement required MMM to purchase the lowest-cost drugs available. MMM disputes this interpretation, arguing that it contravenes the hornbook principle that a court must examine the agreement as a whole to determine the parties' intent. If MMM means to suggest that I was unaware of the ABC's of contract interpretation, it is mistaken. (*See also, e.g.,* Op. at 18 (in analyzing a term's ambiguity the court will consider, *inter alia,* "the particular contractual provision, an overview of all the terms," and other evidence)). Rather, MMM is doing precisely what is not permitted on a motion for reconsideration: starting from its disagreement with the Opinion's conclusions and reasoning backward, hypothesizing that I could not have reached such a conclusion if I had been applying the correct standard. Considering the contract as a whole, MMM

claims, inevitably changes the analysis so that it can lead to but one conclusion: that maintaining an "appropriate" inventory of pharmaceuticals (Agreement 1.5(b)) as a matter of law does not mean that MMM was required to buy pharmaceuticals for the lowest possible price.

One reason this is so, says MMM, is that the pricing of pharmaceuticals is covered by Agreement Section 2.2. (MMM Br. at 9-10). That interpretation seems careless; certainly it does not strike me as the only possible interpretation. Section 2.2 calls for MMM to receive a one-time incentive payment if it realizes $500,000 in drug cost savings in 2006 (the first year of the Agreement) as compared to 2005. (Agreement § 2.2(c)). A one-time bonus for aggregate savings does not specifically address the existence, or not, of a duty to obtain the lowest price for individual medications. Section 2.2, moreover, appears in a section entitled "Compensation to MMM" under Article II, "*Hospital* Responsibilities" (emphasis added). If Section 2.2 governed MMM's alleged duty to purchase the lowest priced drugs, it would be oddly placed in a section listing the contractual responsibilities of the Hospital. By contrast, section 1.5(b), the claimed source of the duty to obtain the lowest priced drugs, appears more naturally in the section covering *MMM*'s duties. As noted in the Opinion at page 29, MMM's own representative acknowledged in a deposition that MMM had a duty to purchase drugs at the lowest cost possible "as best [they] could." (Argiropoulos Cert., Ex. D, Gutfield Dep., at 165:23-166:5).[4]

Can it truly be said that the evidence for MMM's interpretation is so one-sided as to compel a conclusion as a matter of law? I thought, and think, not.

Likewise, MMM attempts to reargue the Court's rejection of its position that the PACT provision of the Agreement (not § 1.5(b)) governs pricing, and preempts any alleged duty to obtain the lowest-cost drugs. I discussed that

---

[4] MMM also simply sets aside the more general legal point that a complex contract for expert services may impose duties that are governed by professional standards extrinsic to the contract. (Op. at 28). "Appropriate" is a broad and flexible term that may require factual development to be understood properly.

Further, MMM points to Section 2.2(d), in which the parties agreed that any increase in the salaries of Pharmacy employees had to be "reasonable pursuant to market standards." (Agreement § 2.2(d)). MMM reasons that because the Agreement limits labor costs, the absence of a similarly worded provision for drug costs is fatal. That argument is perhaps tenable, but it is hardly dispositive, and it certainly does not compel judgment for MMM.

argument in the Opinion, at pages 29-30, and will not repeat that discussion here. Suffice it to say that a fact finder might well agree with MMM that PACT was the only authorized source from which MMM could obtain pharmaceuticals. But MMM's own representative indicated that MMM had a duty to purchase the least expensive drugs, an admission that might reasonably be interpreted to qualify its duty always to use PACT. Moreover, as the Opinion notes, MMM provided invoices indicating that it used vendors other than PACT. That course of performance may validly be considered as evidence of how the parties interpreted their own contract.[5] It tends to suggest that the PACT provision was not ironclad.

The task before me now is not to determine which interpretation is the more reasonable. The only question is whether, applying the correct legal standards, there is more than one reasonable interpretation. There is, and MMM's motion for reconsideration must therefore be denied.

### D. Reconsideration of Dismissing the Hospital's Negligence Claim without Prejudice

The Hospital asserted a cause of action for negligence. In connection with summary judgment, the Hospital requested that the Court dismiss that negligence claim without prejudice, which I did. (Hospital Opp. at 40; Op. at 34). MMM now argues that the Court should reconsider, and should dismiss the negligence claim with prejudice.

Once a defendant has filed an answer or a motion for summary judgment, Federal Rule of Civil Procedure 41(a)(2) permits a plaintiff to voluntarily dismiss a cause of action only with leave of the court. Fed R. Civ. P. 41(a)(2). "Generally, a motion for dismissal 'should not be denied absent

---

[5] *See* Restatement (Second) of Contracts § 202; *Longer v. Monarch Life Ins. Co.*, 879 F.2d 75, 81 (3d Cir. 1989) (when writing is ambiguous, course of performance is relevant to determination of parties' intent); *Conway v. 287 Corporate Center Assocs.*, 187 N.J. 259, 269, 901 A.2d 341, 347 (2006) (relevant extrinsic evidence may "include consideration of . . . the interpretation placed on the disputed provision by the parties' conduct"); *State Troopers Fraternal Ass'n of N.J., Inc. v. State*, 149 N.J. 38, 692 A.2d 519, 524–25 (1997) (citation omitted) (court reforms contract based on party's continuing practice of making retroactive pay adjustments not explicitly provided for in agreement); *Rod v. Gidley*, 2009 WL 3488456 at *5 (N.J. Super. Ct. App. Div. 2009) (not precedential) ("Where a course of performance is inconsistent with the language of the agreement, which one party claims to be erroneous, a court may look to the course of performance to determine the parties' intent and understanding and construe and reform the agreement to accord with the course of performance").

substantial prejudice to the defendant.'" *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 255 (D.N.J. 2001 (quoting *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 728 F. Supp. 1142, 1146 (D.N.J.1990)). MMM did not at summary judgment, and does not now, establish that it will suffer any particular negative consequences as a result of a without-prejudice dismissal. I will thus deny this portion of the motion for reconsideration. In the unlikely event that the Hospital attempts to reinstate its cause of action for negligence, MMM may then attempt to establish that it has suffered prejudice in the interim, or will suffer prejudice as a result of reinstatement.

### IV. CONCLUSION

For the reasons stated above, MMM's Motion for Reconsideration is **DENIED**. An appropriate order follows.

_____
KEVIN MCNULTY
United States District Judge

Dated: August 8, 2013